Next case is Azure Networks,LLC v. CSR, plc Next case is Azure Networks,LLC v. CSR, plc There are two issues on appeal, but I would like to first address the construction of MAC address. The term MAC address has been long used in the field of networking, and as is reflected in the prior art that is in the intrinsic record, it simply means the address that is used to uniquely identify a device on a shared network. And the 129 patent uses MAC address in the same way. It is used to identify the PEAs and the hub. But despite this understanding, this broader understanding of MAC address, the defendants want to argue that the patentee expressly redefined the term to be limited to being defined by the hub. Now that is a heavy burden to say it is an express redefinition, and they hang it all on one sentence. And the one sentence in the specification that they rely upon is the sentence that says, each device is identified by a MAC, a media access MAC address. And that's it. But that's not a definition at all. At best, that's an expansion of an acronym. And it doesn't... Doesn't everything in the spec lean in one direction using a locally assigned MAC? That's true. In the embodiments that are found in the specification... When I say hard MAC, I mean universal MAC. Yeah, that's right. There is no embodiment that specifically uses a universal media access address. But the fact that... But also, there's nothing in the claims that either require one way or the other that it be universal or that it be assigned by the hub in any of the asserted claims. And so, it's true that there's embodiments, but it is also true that there's nothing that's requiring it in either the specification or the claims. And that one sentence, the each device is identified by a media access address, that imparts no extra special definition. For example, if I go to the bank and I say, I'm going to go to the bank and get cash out of an ATM machine. We all know what I'm doing. We all know what the ATM is. We all know how to use it and what I'm going to do with it. It doesn't matter whether or not I say, for example, that ATM means automated teller machine or if I say it means automatic teller machine or even if I say ATM machine and I add on extra machine to my phrase. We all know exactly what it is I'm doing. Similarly, people in the networking field all know how to use MAC addresses and what they are. What if that machine only dispenses coins and not bills and you've done something to identify that it does dispense both? Absolutely. If it were the case that you were in the bank and it only identified... Only maybe ATM means something different in that context. But in this context, there's nothing here in any of the specification or in the claims that say that MAC addresses are special. For example, if I thought that the MAC addresses were somehow unique and different in the specification of the 129 pad, I would have thought that I would see a description of what they are, how big they are, how they're made, what's special, why are they unique in any way. There's none of that in the specification. It's because the patentee was simply using the well-known established way of identifying devices on networks that have been around for years and is found within the intrinsic record in all of the prior art that's cited. It similarly doesn't matter whether or not, for example, how big the MAC addresses are. Just because the fact that different MAC addresses have different sizes doesn't mean that they're no longer found to be MAC addresses. Okay. So you want these claims to be construed so that, I guess, Claim 43, when it refers to plurality of MAC addresses, can encompass both hard MACs and soft MACs. That's right. There's no definition. And then Claim 43 goes back to Claim 14 and then there's all these sending and receiving of signals there, right? And I can understand Claim 14, how it works with a local MAC. Can you walk me through and explain how all these steps would be performed using a hard MAC? Well, the first thing to note in Claim 14, there is no term MAC. That's true. But when we read it with respect to Claim 43, yes, right? And Claim 43 is the one that you're asserting. So now I'm trying to understand how, you know, you want me to believe that a peripheral device identifier can encompass or use a universal MAC somehow. So can you walk me through these six steps, sending, receiving, sending, receiving, sending, receiving, and how that would be done using a universal MAC? Sure. So again, because there's not necessarily the case that it's just sending a MAC address, for example, or generating a MAC address. You see here that you can send a message to indicate the availability of hub. So that's just a beacon saying, you know, where I am. That's the heartbeat. Yep. The second one is receive from the peripheral device a message indicating the availability of the first peripheral device. Okay. So there's a message from the peripheral device saying, I'd like to join up. It could include a MAC address. It's hard to get a MAC address. It doesn't have to. There's nothing in the claim that's requiring that. The receiving from the first peripheral device, a message indicating the availability of it. So the hub gets it. What about step three of Claim 14, send to the first peripheral device a signal including a first peripheral device identifier? This step has the hub device sending the first peripheral device identifier. That's right. And it's sending... How would that be a universal MAC address? Or the peripheral? Sure. For example, if the... Again, that doesn't say MAC address. It just sends an identifier. But moreover, it could well be that the hub device knows what the peripheral device's MAC ID is. How would it know that? Because, remember, it already receives a communication from the first device previously. So the PEA says, here I am. I want to join up. Here's my MAC address. Then this... My hard MAC address, my universal MAC address. There's no reason that it couldn't. There's nothing in here that says that's not possible. And we shouldn't read in a limitation that by definition says, well, you must be either generated or not. And so it receives it. And then the hub identifies and says, yes, okay, I want you to join in. Sends out and says, you have a first peripheral device identifier. Now, the first peripheral device identifier could include the MAC address. It doesn't have to. Okay. So your little step three, where it introduces the notion of a peripheral device identifier, for the first time with the hub using it, it could have been... You're saying it could have been received by the hub from the peripheral in step two. Or it could be... It could, for example... For example, a patent that talks about tokens. And so it talks about taking a MAC address and then hooking it up with a stream ID and then sending that back. And so it doesn't... For example, the MAC address could be included inside that first peripheral identifier. It doesn't necessarily need to be coextensive with it. So yes, it could be the case that the MAC address is being sent back and forth. Importantly, there's nothing in here that says, you know, limits it to being created or generated or anything else in that situation. All it says is, you have to go tell the peripheral device who, you know, which one it's going to talk to. Obviously, everybody needs to identify who are the right devices on the network. Okay. So you're saying it could be either the hub device already has a pre-existing list of all the hard MACs of these peripherals, or it could be the peripheral itself that communicates to the hub in step two, its universal MAC address. Right. And if we go to 43, there's nothing in there... It doesn't say anywhere in here, oh, it had to be specifically included in any of those steps. It just says there also is considered a plurality of MAC addresses. So then where's there in the written description these notions that it can be, you know, the hub already has in it somehow pre-hardwired the universal MACs of the peripherals, or that it's the peripheral using its universal address to respond to the hub's heartbeat, so that, you know, that's the personal, that's the peripheral identifier. There's no place in the spec that says, please use the universal MAC. That's certainly true. If there were, then we wouldn't be having this dispute. Let me direct your attention to A0140. Right around, this is column nine, right around 15. Yep. It says the PEA may have two additional active MAC addresses. The one that's selected for attachment and the one the hub assigned to the PEA. Is that an indication of an address that's assigned by the hub, but that there's also other addresses that are involved in the process? There are multiple different MAC addresses there, and they're being assigned. I think my point... So are all these assigned by the hub? So my, I believe it's not at all clear, but my opponent would say, oh, well, it's not necessarily assigned, but it was generated in the first instances, and therefore you get to pick ones that the hub made originally. And so I would say the spec is very unclear. But what is also... Just to help your case. It would, and I obviously would love to say, well, that's clearly an indication. I think it's ambivalent. I don't think it, it certainly does not help them, but I don't think it necessarily helps us. But that's also crucial because in this case, they're trying to expressly redefine the term. And so that's a heavy burden. They have to have that term reasonably defined with reasonable clarity, deliberateness, and precision sufficient to narrow the term. Given the fact that there is this universal, this big understanding of MAC addresses that's found in the IEEE and otherwise. And their one sentence does not help meet that huge burden. Well, let's look at the page before that on 139, column seven, line five, four. It goes, it begins with, the PEA may have a different set of active streams for each MAC address it supports and only responds to a token that specifies a MAC address of the PEA. Doesn't that suggest that the PEA has a universal MAC or could have a universal MAC? I also agree that that is, it's very, it's not clear. It could well be. I don't, it obviously does not say universal MAC right there. If it did, we'd, you know, that would be the case. It doesn't say that it's a MAC that's assigned by the PEA. I agree. I agree. Absolutely. That said, it's also the case that because we are, everyone is using what is known in the field as MAC address, and they know that it can have, for example, the IEEE definition has a universal or... It is a case you can't point anywhere in the specification that we could look at and infer that the PEA has a universal MAC or that it... I think there are places in the specification, as you pointed out, Your Honor, where it's not at all clear and it doesn't say exactly where the MAC address came from. That's certainly true. So that's your best written description support for the usage of a universal MAC for the peripheral? Well... The portions where you acknowledge that it's at best ambiguous. I'm saying that it's at best ambiguous. Those are the clearest indications of an embodiment that may have a universal MAC address. But what I'm saying is the term MAC address has a well-understood meaning in the field and it's that universe... And they're using that MAC address here throughout. And so therefore, because that universal understanding is applicable, it could... There's nothing stopping MAC addresses from being locally... That's true. But then when we look at the specification and the rest of the patent, I mean, why is it we wouldn't find that there's a disclaimer here? There's certainly nothing that arises to a clear disclaimer. There's certainly nothing in this patent that says you must only use locally defined MAC addresses. To the contrary, it just simply has a few embodiments. And there's nothing special about the fact that there's a locally defined MAC address. That's also critical. It's not... Like I said, there's nothing in here that says, well, here's what this new special MAC address is, or here's how to make it. None of that. All it says is let's use MAC addresses as identifiers. And the claims help you out here some because there are claims that are not asserted in which it says, where are the MAC addresses made? They're made in the link layer of the hub device. And so, for example, you have claim 50, which talks about where it's made. And you can say, well, that's talking specifically about the link layer making it. And I understand that. But there's also the point that it's also specifying where it's being done. And that's in the hub. There's other claims that... The other claims don't talk about where they're made. Why can't your case be like the Simon case, where it's about a double lumen catheter? And it was known in the art, very well-known in the art, that double lumen catheters could be either coaxial, or they can be running in parallel. But the way the spec was written, it was very clear that this inventor was really contemplating the coaxial. And so, ultimately, the Federal Circuit ruled that was the appropriate claim construction for double lumen catheters. Right. And in that case, it's different because there they're talking about what the invention is. They're saying, this is special. This is a special, unique, interesting thing. And we're going to define it. We're going to say it's special and unique and important to the invention. Here, in contrast, there's nothing special or unique about the MAC addresses. They just happen to be device identifiers. What's the special, unique thing about your invention? Oh, so this was one of the first... I've had a thousand claims across over 10 times. Right. It's pretty striking. It must be something really good. BBN was one of the first companies that started worrying about wireless personal area networks. They were one of the original... What is it? What's the... Before this, as is discussed in the background of the invention, wireless personal networks either had to use wires or they basically only could communicate with more or less one peripheral device. BBN was one of the first groups that was experimenting with having lots of different PEAs or different personal devices attached at different times and come on board or not come on board. And so that, as shown in the intrinsic record, helped to lead to the IEEE's 80215 working group. And eventually became part of the broader wireless personal area network. Hey, Councilor, you're into your rebuttal time. Do you want to reserve it? Yes, please. Thank you. Okay. Thank you. Mr. Mason. Good morning. May it please the Court. My name is Dominic Massa. Together with my colleague, Mr. Tom Prost, we represent the Appellee Broadcom Corporation, speaking on behalf of all appellees here today. This Court should affirm the claim construction and judgment of non-infringement because a person of ordinary skill in the art, reading the entire patent in the context of that entire patent, would understand that the MAC address in the 129 patent is limited to a device identifier generated by the hub. The Court asked the question, what's special about the 129 patent? And if you look right at the title, it's a personal area network with automatic attachment and detachment. The way that occurs is that the hub orchestrates all the communication in the network. And a person of skill in the art reading this patent as a whole would understand that it is the job of the hub to orchestrate all those communications. And the only way that it's disclosed in the patent for that to come about is for the hub to generate the MAC address and provide it to the person. The problem is the claim doesn't talk about how the MAC address gets generated. It just talks about using a MAC address. And MAC addresses have a very particularized, specific, concrete, well-established meaning. And I think the evidence supports that. And so, you know, it sounds to me like you're trying to potentially inject a certain step or feature into the claim that's not actually in the claim. What we're doing is we're talking about the definition of MAC address in the context of the patent. In the context of the IEEE or in the context of a different piece of prior art, you need to read the specification of that different piece of prior art. But MAC address has a very specific meaning in the art. What is it about the patent that limits that meaning? The patent exclusively refers to a hub-generated MAC address. And it does so throughout all the figures, throughout the entire specification, and the claims. There's two types of MAC addresses. One that's generated by the hub and one that's universal. If the patent-only address is the one that's generated by the hub, that doesn't necessarily limit the term in the art as a whole. It's still a MAC address and there's still two different forms of addresses. The issue is, though, not what the term might mean in the art. And it's certainly disputed about whether there is a single defined meaning of the term MAC address in the art. The references relied on by Azure come from after the date of the invention. They cite to a 2002 IEEE specification. That's no evidence of how MAC address was used at the time of the invention, which predates that. They refer to a 2003 patent. Let's put that to the side. Your best argument is that the spec somehow has redefined or constricted the meaning of MAC address to a particular type of MAC address. And it's the same as in the PsyMed case, as well as many other cases, ICU medical, where the term was a spike. And throughout the patent, it was a pointed spike. And this court affirmed that construction and excluded the use of a tube or a blunt instrument to be used as a spike. Same thing with retractable technologies. It was a single body syringe. And although the term body might have incorporated multiple pieces, its consistent use in the specification as a single body syringe limited the invention to that. And the same thing as Judge Chen mentioned in PsyMed, where there were coaxial catheters and side-by-side catheters, the consistent use in the specification limits that term. And that's the context in which claim construction needs to occur.  GEOFFREY HINTON There's nothing in the spec that criticizes the use of a universal MAC, right? Or trying to overcome the prior art by saying, we're not a universal MAC. GEOFFREY HINTON There's nothing to... There's no prior art that was addressed and overcome. So there's not a prosecution history issue here. But the purpose of the patent, the whole context of the patent is this dynamic attachment and unattachment. And actually what was important in this patent was the context. The context here is this was a personal area network for a soldier in a battlefield, was the history of this. And the patent talks about there being interference in that situation and that these are low power devices that, you know, you have a battery power that has to last a while. In that context, the communication needed to be short. And actually the specification supports the idea of this short MAC address, a MAC address that's controlled by the hub. The MAC address in the IEEE was 48 bits long. The MAC address that's in the body land documents that are the extrinsic evidence and the MAC address talked about in this patent is short because there are only a few devices that the soldier might have. It says up to 100. It's a seven bit long MAC address. That's important because if you look at this at the spec, there are short messages and long messages. What are your invalidity defenses? You must have some. Certainly there is a written description problem, as Your Honor alluded to in questioning Azure. There is no disclosure of any universal MAC address. There's no disclosure in the patent of the MAC address coming from that peripheral device to the hub. What about prior art? You know, the use of a MAC address to link peripheral to a host device, you know, filing date 2000. Is there prior art? We have submitted extensive invalidity contentions. And yes, we also have invalidity defenses based on anticipation and obviousness. But the judgment of non-infringement should be affirmed because the claim construction was correct. In the context of this patent, there is only one type of MAC address and that's provided by the hub. And it served this purpose of having this reattachment and this dynamic system. And the short message coming from the hub to the peripheral says, your peripheral one, your peripheral two. It doesn't need to first receive this long IEEE MAC address from the peripheral. That step is unnecessary. So it reduces the number of steps and it makes for an efficient dynamic system, which if you read the context of the patent, is what the patent is talking about as a whole. So we find disclaimer where the use of a term is consistent throughout the patent and gives in the specification, there's only one meaning to that term. What about the language that I cited to your opponent? Doesn't that suggest that there's more than one meaning here? There's not. In the context of the patent, you'll see in the figures, like figure 11 that deal with the attachment process, it is always the case that the MAC address comes from the hub. So when the specification talks about a PEA, I believe you pointed to column seven, which can have a set of MAC addresses, those all come from the hub. Just because it has a set of MAC addresses, doesn't tell you where it comes from in column seven. What it does tell you is in the... That specifies a MAC address of the PEA. It doesn't say a MAC address of the PEA generated by the hub. That particular sentence does not, but the process... Isn't that enough? Isn't that enough to show that there's not disclaimer? It's not, because that at column seven follows the discussion of how the PEA got that MAC address. And there's only one way in which that PEA gets the MAC address, and that's through the attachment process where it's provided by the hub. There are these other things called the AMACs or attachment MACs. Those are, again, generated by the hub. The hub establishes a list of AMACs that can be used by a PEA in that attachment process to raise its hand and say, I want to attach. Once that happens, then the hub provides the MAC address that will be used for identification in all subsequent... Let's look at the language on A0140 column nine. This is something else that I asked your opponent. It says, during attachment, the PEA may have two additional active MAC addresses. The one it selected for attachment, which you would argue, I think, is provided by the hub. And then it goes, and the one the hub assigned to the PEA. So that seems to clearly suggest to me that there's one MAC address that's assigned by the hub to the PEA, and there's other MAC addresses. Don't those suggest that there's not a clear disclaimer here? No, because column nine is talking about the attachment MAC, and it refers back to column seven, around line 62. It talks about that there's a hub-assigned MAC address and the other for use with attaching PEA's self-selected MAC addresses, AMACs. And that occurs in this LLT partition, which is in the hub. So it's the hub that provides the AMACs, provides that list of AMACs. It's a different term than MAC address. It's an attachment MAC, which is of a different type. And that doesn't limit the term. It doesn't apply to the term MAC address as used in claim 43. The patent also talks about the hub MAC address. Yes, the hub itself has a MAC address. It needs to be able to identify itself. Is that the universal hub MAC address, or is that the locally generated and assigned hub MAC address? In that case, it would collapse if it is the MAC, the hub. The hub wouldn't go through the trouble of generating for itself a locally assigned MAC address, right? Well, it very well might. They might have a pseudo-random number, which it assigns to itself to distinguish it from your MAC address. If you have a hub on your belt and the GPS in your boot, you don't want to be interfering with me. So the hub... Putting it a different way, there's nothing in the spec that excludes the usage of the hub's universal MAC. There's no indication that there is a universal MAC. So it just, it lacks foundation. There's nothing there to exclude it because there is absolutely nothing there to say that there is a universally assigned MAC. But if we just assume for me that we take it that the evidence is clear, that when you talk about MAC addresses, one of ordinary skill in the art of network devices, they know it can be either universal MACs or local MACs. And then the description here at the hub's MAC address, there's nothing in there in this spec that excludes the usage of the universal MAC for the hub. The only process talks about the MAC generating... I'm sorry, the hub generating MAC addresses. And so the process is one in which it needs to uniquely identify something. And the hub is going to select a MAC address that allows itself to identify itself on the network. And then it's going to provide to each of the peripherals an address for the peripherals to identify themselves. If it generates its own address, then how does a PA know that it's being pinged in? The particular message, the heartbeat message, is the PAs are programmed to receive that message. They understand that the hub will be generating these messages. And when they see a message that has the MAC address of the peripheral, then they understand it's their turn. This is a token ring system in which the MAC address and the stream are... That would work just as well if these were universal addresses at the hub, that's correct? It would work in the sense that the hub could have a universal address. In fact, this is for soldiers and there's a troop, a squad of soldiers. You got three on that have the hub device attached to them. What would be the best way for a PA to distinguish the different hubs if not the universal address? The patent isn't directed to how the PAs distinguish different hubs, but the patent is directed to how the hub coordinates the communication among the PAs. And in that sense, in the sense of claim 43, pending back from 14, it's the hub that generates those addresses and sends them to the PAs. The patent is agnostic as to the origin of the hub MAC address. Thank you. I believe I just heard my opponent see that the hub MAC address could be universal, it could be local in the patent. At that point, if it can really be both, then they certainly have not satisfied their position that there is a reasonable clarity, deliberateness and precision sufficient to narrow the definition of the claim term in a manner urged. If it could be both and they admit that it could be both, then you certainly haven't narrowed it. You certainly haven't used something different than what everybody in the art understands. It could be both for the hub, but maybe only one for the peripheral. Maybe. Based on the way it's used and described with respect to the peripheral. Maybe, but the point being, it's all the same for the same thing MAC addresses. It's using the same word. And it's being used for the same function, which is to identify devices on the network. So the point being is, there's no reason to define in that case, MAC addresses in the patent to specifically mean only those things that can be generated by the hub. And similarly, there was discussion about, well, you need to be dynamic. You need to have things change on the fly. That's not in the definition that the court provided. The court provided a definition that says that a device identified generated by the hub. That's it. There's no dynamic requirement. There's no reassignment. That's all that's limited in the court's definition. So therefore, to add in extra baggage at this point would be improper. Well, it's really just the rationale for why the judge arrived at that claim construction. Because when you look at the spec, it's all about this dynamic attachment, detachment, reattachment. That's right. There's certainly dynamic in the sense that it does show reattachment and attachment. That said, there's, again, nothing in the claim that's requiring that. And so therefore, there's nothing that should be read in from those embodiments into the claim. I see. If there's no further questions. Questions? Thank you very much.